## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Ivan Morales

v.                                              Civ. No. 24-cv-355-SE-AJ

Warden, FCI Berlin

### REPORT AND RECOMMENDATION

Petitioner Irvin Morales, a prisoner at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. No. 1). Morales asserts that the Federal Bureau of Prisons ("BOP") has disallowed time credits he was eligible to earn under the First Step Act ("FSA") during eight months and twenty-two days in 2024, while he was in transition between correctional facilities and that he was also not provided the opportunity to earn any time credits. Presently before the court is the Warden's motion for summary judgment (Doc. No. 6), to which Morales has objected (Doc. No. 8), and which has been referred to the undersigned Magistrate Judge for a recommended disposition. See 28 U.S.C. § 636(b)(1)(B). As explained more fully below, the Warden's motion should be denied.

**Standard of Review**

A. Habeas Corpus

Habeas corpus review pursuant to 28 U.S.C. § 2241 is appropriate if a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This court may adjudicate claims, such as the one at issue in this case, alleging that the BOP has unlawfully failed to apply sentence credits. See Francis v. Maloney, 798 F.3d 33, 36 (1st Cir. 2015). The petitioner bears the burden of proving that his continuing detention violates his federal rights. See Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

B. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "carries with it the potential to affect the outcome of the suit." French v. Merrill, 15 F.4th 116, 123 (1st Cir. 2021) (quotation omitted). A material fact is in genuine dispute if "a reasonable jury could resolve the point in the favor of the non-moving party." Id. In considering the evidence, the court must draw all reasonable inferences in the nonmoving party's favor. Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).

**Background**

The relevant facts are largely undisputed. On January 24, 2024, the United States District Court for the Western District of New York sentenced Morales to a 120-month term of incarceration, to be followed by eight years of supervised release, following his guilty plea to drug and firearms charges. See Judgment, United States v. Morales, No. 1:23-cr-00094-JLS (W.D.N.Y. Jan. 25, 2024). According to BOP, Morales' projected release date, inclusive of good conduct time is April 22, 2031. Decl. of Robert Rouleau, ("Rouleau Decl.") (Doc. No. 6-2) ¶ 5; id., Att. A-2 (Doc. No. 6-4). See 18 U.S.C. § 2624(b) (describing calculation of good conduct credit).

After his conviction, but prior to arriving at FCI Berlin, Morales was in the custody of the U.S. Marshals Service. He was housed at Niagara County Jail in Lockport, N.Y., until February 1, 2024, when he was moved to the Northeast Ohio Correctional Center in Youngstown, Ohio. He remained there until August 13, 2024, after which he was held at the Cimarron Correctional Facility in Oklahoma until October 7, 2024. Morales was then placed at the Federal Correctional Institution in Lewisburg, PA ("FCI Lewisburg") for two days, and the Federal Medical Center in Devens, Massachusetts ("FMC Devens"), for one. Rouleau Decl. (Doc. No 6-2) at 3-4 n.2; id. Att. 6 (Doc. No. 6-8). BOP has no contract or official association with Niagara County Jail,

Northeast Ohio Correctional Center or Cimarron Correctional
Facility. Rouleau Decl. (Doc. No. 6-2) ¶ 18. Morales arrived at
his BOP designated facility, FCI Berlin, on October 10, 2024.
Id. ¶ 20.

## First Step Act

Enacted in December 2018, the FSA established a sentence
credit program that operates separately from the "good conduct"
credits prisoners may accumulate. The FSA permits eligible
prisoners to earn FSA "time credits" towards their sentences if
they complete programs and activities to reduce their risk of
recidivism. See 18 U.S.C. § 3632(d)(4); Williams v. FCI Berlin,
No. 22-CV-564-JL, 2023 WL 5961688, at *2 (D.N.H. Aug. 1, 2023),
report and recommendation adopted sub nom. Williams v. FCI
Berlin, Warden, No. 22-CV-564-JL, 2023 WL 5959740 (D.N.H. Sept.
13, 2023).

The FSA allows eligible prisoners to earn up to fifteen
days of time credits for every thirty days of qualified programs
and activities they participate in while serving the custodial
component of their sentences. Maitland v. Warden, FCI Berlin,
No. 23-CV-074-SE-AJ, 2024 WL 3541213, at *2 (D.N.H. Jan. 31,
2024) (citing 18 U.S.C. § 3632(d)(4)(A), (B), (D)); see also
Yufenyuy v. Warden, FCI Berlin, 659 F. Supp. 3d 213, 216 (D.N.H.
2023) (noting that time credits are earned for successful
completion of evidence-based recidivism reduction programs

4

("EBRRs") and productive activities ("PAs") (citing 18 U.S.C. §
3632(d)(4)(A)). FSA time credits, when applied, advance the date
when the prisoner will be placed in "prerelease custody"
(including home confinement or a residential reentry facility),
and accelerate the date when the prisoner will leave BOP custody
to start a term of supervised release. Yufenyuy, 659 F. Supp.
3d. at 216.

## **Analysis**

The defense posits several reasons in support of its
motion. First, the Warden argues that Morales's failure to
exhaust his administrative remedies entitles him to judgment as
a matter of law. Next, the Warden asserts that Morales was not
entitled to FSA credits for any incarceration taking place after
his sentencing on January 24, 2024, but before his arrival at
his "designated facility," FCI Berlin, on October 24, 2024. He
further argues that Morales is not entitled to FSA credits for
his pre-Berlin time because he did not participate in any
programming during that time. The court addresses these
arguments in turn.

A. Exhaustion

"Under federal common law, a prisoner must exhaust his
administrative remedies before filing a § 2241 petition
challenging [the] BOP's calculation of his release date,
including the determination that he is ineligible to apply FSA

5

time credits toward prerelease custody or supervised release, and failure to exhaust administrative remedies may result in dismissal." Calderon Hernandez v. Warden FMC Devens, No. 23-11330-MPK, 2023 WL 5939634, at *4, (D. Mass. Sept. 12, 2023). See also Ritchie v. Berlin, No. 24-cv-16-JL-TSM, 2024 WL 2729917, at *3, (D.N.H. Apr. 24, 2024) (describing petitioner's obligation to exhaust administrative remedies by fully complying with the BOP's administrative process before filing a § 2241 petition challenging the validity of a final order of removal that served as the alleged basis to deprive him of FSA credits), adopted by 2024 WL 2722255 (D.N.H. May 28, 2024); Colorado-Cuero v. Warden, No. 23-cv-295-JL, 2023 WL 4565472, at *1 (D.N.H. June 8, 2023) ("Federal courts apply a federal common law exhaustion requirement to the claims of inmates challenging the BOP's computation of their sentences, and the failure to exhaust may result in the dismissal of the petition."), adopted by 2023 WL 4564379 (D.N.H. July 17, 2023).

"Proper exhaustion requires full compliance with the [BOP's] internal procedures for seeking administrative relief." Yancey v. Warden, FMC Devens, 712 F. Supp. 3d 95, 104 (D. Mass. 2024). "This administrative exhaustion requirement generally serves twin purposes: promoting judicial efficiency and protecting administrative agency authority." Colorado-Cuero, 2023 WL 4565472, at *1 (quoting Carroll v. Hazlewood, No. 21-cv-

6

139-PB, 2021 WL 2877463, at *2 (D.N.H. May 26, 2021), adopted by
2021 WL 2857184 (D.N.H. July 7, 2021)).

"The common law exhaustion requirement is subject to an
exception where exhaustion would be futile[.]" Colorado-Cuero,
2023 WL 4565472, at *2; see also Calderon Hernandez, 2023 WL
5939634, at *4 ("Courts recognize exceptions to the federal
common law administrative exhaustion requirement, including
where exhaustion would be futile"). One example of futility in
this context is when BOP "has indicated predetermination of the
issue." Williams v. Warden, FCI Berlin, Civ. No. 23-cv-509-LM-
AJ, 2025 WL 2207024, at *6 (D.N.H. Aug. 4, 2025) (quoting Wright
v. United States, No. C19-5254-RBL-TLF, 2019 WL 2746630, at *7
(W.D. Wash. June 5, 2019), R&R approved, 2019 WL 2743636, at *1
(W.D. Wash. July 1, 2019)); see also Kvashuk v. Warden, FCI
Berlin, No. 23-CV-007-SE, 2024 WL 4349850, at *2 (D.N.H. Sept.
30, 2024 (quoting Huihui v. Derr, No. 22-00541 JAO-RT, 2023 WL
4086073, at *3, (D. Haw. June 20, 2023) ("pursuit [of an
administrative remedy] would be a futile gesture because . . .
there is an error in the Respondent's understanding of when
Petitioner can begin earning credits" under the FSA)). Where, as
here, the Warden takes the fixed position that an inmate is
categorically ineligible to earn FSA credits prior to his
arrival at his "designated facility," the court finds that the

futility exception excuses Morales's failure to pursue the BOP's administrative process.

B. Entitlement to FSA Credits

The Warden's position is straightforward: Morales was not, as a matter of law, "entitled to FSA credits prior to arriving at [his] designated facility," FCI Berlin. Def. Mem. (Doc. No. 6-1) at 2. The Warden relies on a BOP regulation setting forth "procedures regarding the earning and application of time credits . . ." Id. at 4. That regulation states that "[a]n eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." 28 C.F.R. § 523.42(a). But this court and others have held that the regulation contradicts the plain language of the FSA, under which a "sentence commences," on "the date the defendant is received in custody awaiting transport to his initial BOP-designated facility." 18 U.S.C. § 3585(a). See Yufenyuy, 659 F. Supp. 3d at 218; Sharma v. Peters, 756 F. Supp. 3d 1271, 1282 (D. Ala. 2024) ("[T]he BOP's regulation that adds a layer of eligibility not found in the statute conflicts with its express language."); Kvashuk, 2024 WL 4349850, at *5-6 (noting conflict between regulation and statute); Borker v. Bowers, Civ. No. 24-cv-10045-LTS, Order on Motion to Dismiss (D. Mass. April 9,

8

2024) (finding, contrary to BOP regulation, that sentence "commences" on date of sentencing); Umejesi v. Warden, No. 22-CV-251-SE, 2023 WL 4101471, at *4 (D.N.H. Mar. 16, 2023) (same), report and recommendation approved sub nom. Umejesi v. Warden, FCI Berlin, No. 22-CV-251-SE, 2023 WL 4101455 (D.N.H. Mar. 30, 2023).

In other words, an inmate's eligibility to earn FSA time credits begins "the moment he was sentenced under 18 U.S.C. § 3585(a), because he was in BOP custody." Jobin v. Warden, FCI-Mendota, No. 1:23- CV-01700-WBS-SKO (HC), 2024 WL 1367902, at *4 (E.D. Cal. Apr. 1, 2024), report and recommendation adopted, No. 1:23-CV-01700-WBS-SKO (HC), 2024 WL 2786898 (E.D. Cal. May 30, 2024); Patel v. Barron, No. C23-937-KKE, 2023 WL 6311281, at *5 (W.D. Wash. Sept. 28, 2023) (finding that "the FSA unambiguously requires the BOP" to calculate an inmate's FTC eligibility from the date the inmate is sentenced and committed to custody of the BOP); Mohammed v. Stover, No. 3:23-CV-757 (SVN), 2024 WL 1769307, at *2 n.2 (D. Conn. Apr. 23, 2024) (noting its agreement with the "reasoning of Huihui . . . and Yufenyuy . . . which found that BOP's regulations precluding inmates from being eligible to earn FSA credits beginning on the date their sentences commenced contradicts clear congressional intent . . . ."). But see Walsh v. Boncher, 652 F. Supp. 3d 161, 170 (D. Mass. 2023) (relying on regulation to note that eligibility for

FSA time credit does not begin until arrival at designated
facility for service of sentence).

Consistent with its prior decisions in Kvashuk, Umejesi,
and Yufenyuy, and those of other courts cited above, the court
rejects the Warden's regulation-based argument that Morales was
ineligible to earn FSA time credits until his arrival at his
"designated facility," FCI Berlin, in October 2024.

C. Failure to earn FSA credits

The Warden next argues that he is entitled to summary
judgment because Morales did not have a risk assessment prior to
his arrival at FCI Berlin, and because "BOP does not have
records" from the three non-BOP facilities that housed Morales
after he was sentenced that suggested he completed any
programming between January 24 and October 10, 2024 that would
entitle him to FSA time credits. As to the latter issue, the
Warden does not argue either that any such programming was
offered or that such records are unavailable. As to the former
contention, a significant reason for the lack of assessment is
BOP's "policy and practice of waiting until after the transfer
to a designated facility before undertaking the necessary risk-
and-needs assessment and assignment of programming." Borker,
Mem. and Order on Petition, 2024 WL 2186742, at *2 (D. Mass. May
15, 2024). This court – and others – have already determined
that such reliance on BOP regulations is inconsistent with the

terms of the FSA. Accordingly, on the record before the court, this argument does not support summary judgment in the Warden's favor.

## Conclusion

Based on the foregoing, the district judge should deny BOP's motion for summary judgment.[1] (Doc. No. 6). Any objections

---

[1] As noted above, the overwhelming majority of courts to address the issue have concluded that BOP's regulation regarding the commencement of an inmate's sentence runs afoul of the FSA. Beyond that finding, however, there is no consensus about the impact of the "correct" commencement date on an inmate's FSA time credits. Some courts have based remedies on the delay between an inmate's sentencing and arrival at the designated facility. See, e.g., Brenneman v. Salmonson, No. 5:22CV7-RWS-JBB, 2025 WL 957216, at *6 (E.D. Tex. Feb. 25, 2025) (58-week period between sentencing and arrival at designated facility), report and recommendation adopted, No. 5:22-CV-7-RWS-JBB, 2025 WL 914352 (E.D. Tex. Mar. 26, 2025); Huihui, 2023 WL 4086073, at *7 ("This is not a situation in which the prisoner has been waiting for a month or two to be transferred. She has been waiting over seven months to start earning any credits. She should not have to sit and wait to start taking advantage of evidence-based recidivism reduction programming or productive activities simply because BOP's Designation and Sentence Computation Center has not yet designated her."). Another has ordered BOP to retroactively determine whether activities an inmate engaged in prior to assessment at the designated facility qualify for FSA credit. See Puana v. Williams, No. 24-CV-01088-CNS, 2024 WL 4932514, at *5 (D. Colo. Dec. 2, 2024). One court recently denied an inmate FSA credit prior to undergoing a risk and needs assessment, but cautioned that "that does not mean the BOP can simply delay an inmate's assessment unreasonably, nor can an otherwise unreasonable delay be justified by the BOP's statutorily incorrect requirement that the inmate be at his "designated" facility." Shemtov v. Birkholz, No. 2:24-CV-10630-SRM-JC, 2025 WL 1490543, at *6 (C.D. Cal. Mar. 13, 2025), report and recommendation adopted, No. 2:24-CV-10630-SRM-JC, 2025 WL 1489545 (C.D. Cal. May 22, 2025). At this stage of the case, where the court is addressing the Warden's motion for summary judgment, resolution of this issue is not required.

to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).


_____
Andrea K. Johnstone
United States Magistrate Judge

August 18, 2025

cc:  Ivan Morales, pro se
     Raphael Katz, Esq.